UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL JURICICH,

Plaintiff,

v.

COUNTY OF SAN MATEO, et al.,

Defendants.

Case No. 19-cv-06413-WHO

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 13

Plaintiff Michael Juricich brings claims arising out of a police encounter that occurred in San Carlos, California on December 1, 2018. He seeks to hold the County of San Mateo ("County"), the County of San Mateo Sheriff's Office ("CSM S.O."), Deputy Sheriff Michael H. Koehler, and doe defendants 1-50 accountable for allegedly injuring him and violating his civil rights. Before me is defendants' motion to dismiss some but not all of the claims. There is no need for a hearing on the issues raised, and so I VACATE it. For the reasons set forth below, the motion is GRANTED with leave to amend.

**BACKGROUND**

On December 1, 2018 Juricich was walking down the side of the road when a San Mateo County Sherriff vehicle "bleated a 'squawk' signal" and pulled up in front of him. Complaint ("Compl.") [Dkt. No. 1] ¶ 13. Deputy Koehler exited the vehicle and told Juricich to "[c]ome here!" *Id.* Juricich stated that he had nothing to do "with whatever it was that involved the Sheriff SUV and another sheriff vehicle nearby." *Id.* ¶ 14. He alleges that Koehler tried to pull him down by grabbing his neck. *Id.* Juricich "moved away" and was then struck in the face "by either an elbow or fist of Deputy Koehler." *Id.*

Juricich alleges that he did "not resist nor did he run nor strike or attempt to strike

1   Koehler." Compl. ¶ 15. When Juricich "repeatedly" asked what was happening he received no

2   response. *Id.* Koehler bent Juricich's arm behind his back and took "him down to the ground."

3   *Id.* Koehler then "plac[ed] his knee on top of [Juricich's] head," causing Juricich's face and body

4   to hit the tarmac. *Id.* An unnamed deputy arrived and helped Koehler restrain and handcuff

5   Juricich. *Id.* ¶ 16.

6        Juricich claims the he "was not allowed to replace his colostomy bag within his pants."

7   Compl. ¶ 17. He was handcuffed and taken to the San Carlos substation of the CSM S.O., where

8   he was questioned by Koehler and then transported to the Redwood City Jail, where he was held

9   for several hours with no explanation for his arrest. *Id.* He was released around 1:00 a.m. and

10  "eventually got home, with difficulty." *Id.*

11       Juricich believes that the deputies filed false reports and "otherwise attempted to cover-up

12  their and other officers' misconduct." Compl. ¶ 22. He contends that one or more of the deputies

13  wrongfully cited him for assault on a police officer and that the County and CSM S.O. are

14  negligent in training, supervising, and/or investigating complaints against officers. *Id.* ¶¶ 18, 24.

15  He also alleges that CSM S.O. has a custom and policy of using excessive force against citizens.

16  *Id.* ¶ 25

17       Juricich filed a claim with the County on February 27, 2019; the County rejected it on

18  April 11, 2019. Compl. ¶¶ 26-27. On October 7, 2019, Juricich filed this lawsuit asserting seven

19  causes of action, including two claims under 42 U.S.C. § 1983, four pendant state law claims and

20  one federal claim for violation of the Americans with Disabilities Act ("ADA") under 42 § 12132

21  *et seq*. Defendants move to dismiss (1) the *Monell* claims under 42 U.S.C. § 1983 against the

22  County and Koehler; (2) the negligence claims as to the County and CSM S.O.; and (3) the ADA

23  claims as to all defendants. *See* Motion to Dismiss by Defendants Pursuant to Fed. R. Civ. P.

24  12(b)(6) ("MTD") [Dkt. No. 13] 1. Juricich opposed and included a declaration of additional facts

25  that he seeks leave to allege. *See* Plaintiff's Opposition to Motion to Dismiss Complaint

26  ("Oppo.") [Dkt. No. 18]; Declaration of David M. Helbraun in Support of Plaintiff's Opposition to

27  Defendant's Motion to Dismiss ("Helbraun Decl.") [Dkt. No. 18-1].

United States District Court
Northern District of California

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.** *MONELL* **CLAIMS AS TO ALL DEFENDANTS**

Defendants move to dismiss Juricich's *Monell* claims for failure to state a claim. Compl. ¶¶ 38-42 (second cause of action); MTD 2. Juricich alleges that he is "informed and believes" that

3

CSM S.O. has a custom or policy to use excessive force against citizens, "evidenced by [their] failure to train, supervise, discipline and/or investigate complaints and/or charges against [CSM S.O.] officers who had a known propensity for violence and excessive force and generally violating the rights of citizens." Compl. ¶ 25. He claims that these acts and/or omissions were "ordered, approved, tolerated, authorized, directed and/or ratified by policy making officers for the [County] and Koehler . . ." *Id.* ¶ 41.

Local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Juricich must plausibly plead the following elements to proceed with his *Monell* claim: "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to [his] constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation. *Torres v. Saba*, No. 17-CV-06587-SI, 2019 WL 111039, at *6 (N.D. Cal. Jan. 4, 2019).

"There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted).

The Ninth Circuit has made clear that claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal* : (1) the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and (2) the "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not

4

unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012).

Failure to train government employees may constitute a sufficient policy under *Monell* if the failure constitutes "deliberate indifference" or otherwise "reflects a deliberate or conscious choice" by the government entity. *City of Canton v. Harris*, 489 U.S. 378, 389-93 (1989) (internal quotation marks omitted). When a failure to supervise is "sufficiently inadequate," it may amount to "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision does not give rise to a *Monell* claim; rather, they need to train must be "obvious." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Ordinarily, "[a] pattern of similar constitutional violations by untrained employees is . . . necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted).

Judged against this standard, Juricich's complaint is deficient. His complaint does not allege any constitutional violations apart from the one he claims to have suffered. *See* Compl. ¶ 23. Further, there is no allegation that Koehler had any policymaking authority that could make him liable under a *Monell* theory.

Juricich claims in his opposition that he recently received the CSM S.O's incident report, which allows him to allege additional facts that he seeks leave to include in an amended complaint. Oppo. 2–4. He provides more factual allegations on the events that led to his arrest. Helbraun Decl. ¶¶ 4–9.[1] Specific to the *Monell* claim, Juricich argues that the incident report reveals that "the reason he was forcefully detained and arrested was that [the deputies] supposedly

---

[1] Juricich provides the following additional factual allegations: He was walking down the road after having a verbal dispute with Michele Gore, his domestic partner of eight years. Helbraun Decl. ¶ 4. Gore made an illegal U-turn to follow Juricich. *Id.* Deputy David Brandt pulled Gore's car over and Juricich called out to Brandt to "cite her." *Id.* ¶ 8. In Brandt's report he indicated that Juricich said, "cite her for cheating on me." *See* Helbraun Decl. Ex. A at 8. Deputy Brandt put his hand on the Juricich's arm to get him back on the side of the road. *See id.* Juricich said "don't grab my arm like that!" and kept walking. *See* Helbraun Decl. ¶¶ 4, 5. Unbeknownst to Juricich at the time, Deputy Brandt called for back up to investigate "some type of domestic disturbance." *Id.*

5

were investigating a domestic violence crime," which leads to the "only plausible inference . . . that the [CSM S.O.] has failed to adequately train its deputies regarding the legal standards that apply for probable cause to arrest for a domestic violence crime." Oppo. 6. He contends that the incident report shows that (i) deputies lacked proper understanding of probable cause under the Fourth Amendment and this failure is plausibly due to poor training or policies; (ii) deputies use "investigations" as a pretext to harass law abiding citizens; and (iii) the CSM S.O. fails to discipline deputies upon review of the incident reports. Oppo. 6–10.

Although defendants do not address the merits or sufficiency of these added allegations in their reply, in the interest of judicial efficiency I discuss why Juricich's additional factual allegations would still be insufficient to state a *Monell* claim. *See* Reply to Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Dismiss ("Reply") [Dkt. No. 19] 1. Although he now alleges, based on the incident report, that the *Monell* claims are based on CSM S.O.'s "departmental failure to adequately train regarding probable cause requirements for domestic violence arrests," he still bases his *Monell* allegation on a single incident.

Regardless of whether Juricich's personal experience exhibits deliberate indifference, by itself it cannot establish that there was a widespread practice actionable under § 1983. Neither is it sufficient to assert generally that CSM S.O. does not adequately train its officers. *See City of Canton*, 489 U.S. at 389–90 ("*Monell*'s rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible.").

Juricich analogizes to *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899-900 (N.D. Cal. 2013) in arguing that his added allegations are sufficient to state a *Monell* claim. Oppo. 7. But Juricich's added allegations are not like the allegations in *Mateos-Sandoval* because he still fails to specify the nature of an alleged policy, custom or practice that give rise to his constitutional injury. Instead, he only provides factual allegations about the single incident that he experienced.

Because these deficiencies could conceivably be cured, defendants' motion to dismiss the

*Monell* claims is GRANTED with leave to amend.

## II. NEGLIGENCE CLAIMS AGAINST THE COUNTY AND CSM S.O.

Juricich brings negligence claims against all defendants. The County and CSM S.O. seek dismissal because Juricich cannot seek direct liability of a public entity unless it is founded on a specific statute. Compl. ¶¶ 47-54 (fourth cause of action); MTD 5.

In California, a statutory basis is needed to impose direct liability on a government entity. Cal. Gov't Code § 815(a). The Code distinguishes between direct and vicarious liability of public entities. A public entity may face derivative liability for the negligent acts or omission of County employees. *See* Cal. Gov't Code § 815.2; *Robinson v. Solano Cty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("Under Government Code section 815.2, subdivision (a), the County is liable for acts and omissions of its employees under the doctrine of *respondeat superior* to the same extent as a private employer. Under subdivision (b), the County is immune from liability if, and only if, [the employee] is immune.") (quoting *Scott v. County of Los Angeles*, 27 Cal. App. 4th 125, 139-140 (1994)).

Juricich concedes that he must identify a statute imposing direct liability on the County and CSM S.O., but argues that these two defendants can be held vicariously liable under state law for the negligence of its employee deputies. Oppo. 10-11. However, the Complaint does not make clear whether his negligence claims against the County and CSM S.O. are brought under a theory of direct liability, vicarious liability, or both. The entire fourth cause of action lumps together all defendants and makes no distinction among the three named defendants in any of the underlying allegations. *See* Compl. ¶¶ 52-54.

Defendant Koehler did not move to dismiss the negligence claim. If Juricich is permitted to allege negligence claims against Koehler, he should be permitted to allege derivative vicarious liability claims against the County and CSM S.O. under California Government Code § 815.2(a). *See A.E.*, 666 F.3d at 638 (holding that district court erred in conflating A.E.'s direct and derivative liability claims and dismissing the latter with prejudice because "[a]s long as A.E. is permitted to allege that County employees were negligent, he must also be permitted to allege that the County is derivatively liable pursuant to California Government Code § 815.2(a)").

7

1  Defendants' motion to dismiss the negligence claims against the County and CSM S.O. is
2  GRANTED with leave to amend. Juricich must clarify the basis under which he brings negligence
3  claims.

### III. ADA CLAIMS AGAINST ALL DEFENDANTS

Defendants move to dismiss Juricich's ADA claims as to all defendants. They argue that the Complaint fails to allege sufficient facts to establish that Juricich has a qualified disability and that the underlying arrest was due to the nature of the purported disability. Compl. ¶¶ 61-66 (seventh cause of action); MTD 6-7.[2]

To allege a claim for violation of Title II of the ADA, Juricich must allege facts sufficient to show that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) (citation omitted).

The Ninth Circuit has held that Title II of the ADA applies to arrests, and recognized two types of claims:

> (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015). A plaintiff bears the initial burden of alleging, and ultimately proving, that a reasonable accommodation exists.

---

[2] Defendants also argue that "there is no legal authority that supports applying the ADA to exigent law enforcement activity under quickly developing circumstances occurring in a public place." MTD 6-7. They distinguish *Sheehan* and assert that Koehler encountered Juricich while walking down the street in a public place; because Juricich was allegedly resisting arrest, he had to respond immediately which meant that he did not have the opportunity to meaningfully assess whether Juricich was a qualified individual with a disability in need of reasonable accommodation. *Id.* at 7. This argument is outside the scope of the pleading stage, where factual allegations contained in the Complaint are accepted as true.

8

*Id.* at 1233. The public entity may then defeat a reasonable accommodation claim by showing that making such accommodations "would fundamentally alter the nature of the service, program, or activity." *Id.* Whether an accommodation is reasonable ordinarily is a question of fact. *Id.* In the context of an arrest, "exigent circumstances presented by criminal activity and the already onerous tasks of police on the scene [informs] the reasonableness of the requested ADA modification." *Id.*

Juricich submits that he can readily allege specific facts detailing his disability and how living with a colostomy bag substantially limits one or more major life activities. Oppo. 11; Helbraun Decl. ¶¶ 10, 12. He also clarifies that he seeks to allege the second type of ADA claim as recognized in *Sheehan* – that defendants failed to provide him reasonable accommodations in the course of investigation or arrest – and that he can add more allegations about how defendants were aware of his disability. Oppo. 11-12; Helbraun Decl. ¶¶ 10-11.

Juricich must sufficiently allege that he is a qualified individual with a disability and that defendants were aware of his disability. He must also "clearly allege what reasonable accommodation should have been provided to [him] and how the failure to provide [him] such accommodation caused [him] 'to suffer greater injury or indignity in that process than other arrestees.'" *Jin v. Alameda Cnty.*, No. 18-CV-04885-SK, 2019 WL 7831143, at *8 (N.D. Cal. Feb. 4, 2019) (dismissing ADA claim against county defendants with leave to amend) (quoting *Sheehan*, 743 F.3d at 1231); *see also Razavi v. Martins*, No. 17-CV-00717-JST, 2018 WL 1933482, at *3 (N.D. Cal. Apr. 24, 2018) (dismissing ADA claim because plaintiff "[did] not identify what steps, if any, Officer Martens was obligated to take to accommodate her disability" and "[did] not include facts alleging that Martens caused her to suffer greater injury or indignity than others").

Juricich brings the ADA claims against all defendants, including both county and individual defendants, but it is unclear whether he sues the individual defendants in their official or individual capacities. I note that the ADA does not provide a cause of action against individual defendants in their individual capacities. *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("[I]ndividual defendants cannot be held personally liable for violations of the ADA."); *see, e.g., Woods v. City of Hayward*, No. 19-CV-01350-JCS, 2019 WL

5789256, at *7 (N.D. Cal. Nov. 6, 2019) (denying dismissal of ADA claims against City of Hayward and Hayward Police Department, but granting dismissal, with prejudice, of ADA claims against individual police officers).

Because the Complaint does not provide sufficient factual allegations, defendants' motion to dismiss the ADA claims is GRANTED with leave to amend. Juricich must clarify the basis under which he brings ADA claims against each defendant.

## CONCLUSION

Defendants' motion to dismiss the negligence claims against the County and CSM S.O. and the *Monell* and ADA claims against all defendants is GRANTED with leave to amend. If Juricich chooses to amend, he should do so within 15 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 10, 2020

William H. Orrick
United States District Judge